PETER H. KLEE, Cal. Bar No. 111707
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
501 West Broadway, 19th Floor
San Diego, California 92101-3598
Telephone: 619.338.6500
Facsimile: 619.234.3815
E mail     pklee@sheppardmullin.com

SCOTT SVESLOSKY, Cal. Bar No. 217660
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
333 South Hope Street, 43rd Floor
Los Angeles, California 90071-1422
Telephone: 213.620.1780
Facsimile: 213.620.1398
E mail     ssveslosky@sheppardmullin.com

Attorneys for Defendant
ALLSTATE NORTHBROOK
INDEMNITY COMPANY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| CLIFTON JOHNSON, an individual,<br><br>Plaintiff,<br><br>v.<br><br>ALLSTATE NORTHBROOK INDEMNITY CO., a corporation; DOES 1 – 10, Inclusive,<br><br>Defendants. | Case No. 2:20-CV-09414 GW (PVCx)<br><br>**DECLARATION OF JASON ROMINE IN SUPPORT OF ALLSTATE'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date: May 6, 2021<br>Time: 8:30 a.m.<br>Crtrm: 9D (Hon. George H. Wu)<br><br>Complaint Filed: September 2, 2020<br>Trial Date: October 12, 2021 |

-1-

# DECLARATION OF JASON ROMINE

I, Jason Romine, declare as follows:

1. I have been employed by Allstate Insurance Company for almost 16 years. During that time period, I have been a casualty claims adjuster, Evaluation Consultant, and Casualty Leader. I am currently an Evaluation Consultant and have performed evaluation consultant duties for Allstate from July 2015 to the present. In that capacity, I review and assess the value of uninsured motorist ("UM") benefit claims submitted by insureds to Allstate Insurance Company and its affiliated entities, including Allstate Northbrook Indemnity Company (collectively "Allstate"). I am familiar with Allstate's retention, distribution and security of its files and related materials. The facts set forth below are based upon my own personal knowledge and/or information obtained from Allstate's business records, which were created in the ordinary course of business at or near the time of the events reflected in those records. If called and sworn as a witness, I could and would testify competently thereto.

2. As an Evaluation Consultant for Allstate, my job responsibilities include assessing the value of uninsured/underinsured motorist (UM/UIM) injury claims arising from automobile accidents. As part of my job duties when evaluating a UM/UIM claim, I review the information gathered from the insured and from the medical providers regarding the injuries and lost wages if claimed, review medical records, bills, and any other information regarding the claim, review the findings from an independent medical examination if applicable, evaluate the claim based on information provided, and decide the amount to pay a claim based on the information provided. I also have extensive experience, knowledge, and training in evaluating bodily injury claims, including over 11 years of reviewing and interpreting medical records and consultation with nurses, doctors, chiropractors, and others in the medical profession in connection with the adjustment and valuation of claims. I estimate that I have evaluated hundreds of bodily injury claims and

reviewed and interpreted thousands of pages of medical records involving bodily injury claims.

     3.     In my capacity as an Evaluation Consultant, I am personally familiar with the manner in which Allstate's files and records are generally prepared and maintained with respect to UM/UIM claims.  As part of its normal business activities, Allstate's employees and representatives maintain information that Allstate generates and receives regarding claims and losses in a claim file and claim notes.  The claim file for a particular UM/UIM claim generally contains records and documentation regarding Allstate's handling of that claim, including correspondence, notes, medical reports and charts, medical bills and invoices, payment records, and compilations of other data prepared at or near the time of the acts, events or conditions identified or described in each document.  The claim notes function as a diary of activities regarding a given claim that are entered by adjusters or other claim personnel at or near the time of the acts or events described therein.  Allstate relies upon information in claim files, claim notes, and policy files for the investigation, adjustment, and payment of claims.  I have personally reviewed Allstate's records regarding the handling of Johnson's UM claim.  A true and correct copy of Allstate's claim notes for its handling of Johnson's UM claim is attached as **Exhibit 13** to Allstate's Compendium of Evidence in support of its Motion for Summary Judgment.  Those claim notes were created in the normal course of business and have been maintained in Allstate's file for Johnson's UM claim.  In addition, the additional documents identified in my declaration below are from Allstate's claim file for Johnson's UM claim.  Those documents were created, sent, and/or received in the normal course of business and have been maintained in Allstate's claim file for Johnson's UM claim.

     4.     From January 2020 to the present, I have been the Evaluation Consultant at Allstate responsible for valuing Johnson's claim for UM benefits.

During this time period, I am one of the Allstate employees responsible for maintaining the claim file and claim notes for the handling of Johnson's UM claim.

5. Attached to Allstate's Compendium of Evidence as **Exhibit 11** is a true and correct certified copy of the Allstate automobile insurance policy, with declarations and endorsements, issued to Clifton Johnson and Maude Johnson, policy number 699 864 084 for the period September 29, 2016 to March 29, 2017.

6. Attached to Allstate's Compendium of Evidence as **Exhibit 14** is a true and correct copy of an Allstate document titled First Notice of Loss Snapshot, which contains the initial information that Johnson reported to Allstate on November 16, 2016 regarding his November 5, 2016 auto accident. Johnson reported to Allstate that an uninsured motorist rear-ended his vehicle, that his vehicle suffered minor to moderate damage, and that he was experiencing neck and back pain. He did not report that airbags deployed. Attached to Allstate's Compendium of Evidence as **Exhibit 15** are true and correct copies of photographs of the vehicle damage sustained in the accident, which Allstate received from Johnson. Attached to Allstate's Compendium of Evidence as **Exhibit 13** at CN3 is a true and correct copy of the claim note reflecting Allstate's November 16, 2016 conversation with Johnson.

7. Attached to Allstate's Compendium of Evidence as **Exhibit 1** is a true and correct copy of a November 18, 2016 letter that Allstate sent to Johnson, wherein Allstate acknowledged Johnson's claim and notified him of his vehicle repair and rental rights.

8. From November 2016 through January 2017, Allstate worked with Johnson to have his vehicle repaired. Attached to Allstate's Compendium of Evidence as **Exhibit 13** at CN76 is a true and correct copy of a January 30, 2017 claim note entry, which reflects communications with Johnson wherein he said he was satisfied that the issues pertaining to the repair of his vehicle had been resolved.

9. On January 13, 2017, Allstate called and spoke with Johnson, who said that he still had some pain, but that is was "not major." Johnson told Allstate that he had back surgery in the past and that the accident may have aggravated his injuries. He asked that Allstate call back in a week to discuss in more detail. Attached to Allstate's Compendium of Evidence as **Exhibit 13** at CN76 is a true and correct copy of a January 13, 2017 claim note entry reflecting the conversation between Allstate and Johnson that day.

10. On January 15, 2017, Allstate sent a letter to Johnson acknowledging his uninsured motorist claim, requesting a list of medical providers that he had seen or planned to see, and requesting that he complete and return an enclosed medical authorization release form. Attached to Allstate's Compendium of Evidence as **Exhibit 2** is a true and correct copy of Allstate's January 15, 2017 letter to Johnson, enclosing an Authorization to Release Medical Records, Authorization to Disclose Wage/Employer Information, and a Medical Provider/Employer Information form.

11. Allstate's files do not show that it ever received the Authorization to Release Medical Records, the Authorization to Disclose Wage/Employer Information, or the Medical Provider/Employer Information form back from Johnson. Allstate uses executed versions of these forms to investigate and obtain important information about an insured's injuries, claim, and past and future medical treatment.

12. On January 17, 2017, Allstate called and left a voicemail message with Johnson, who never returned the call. Attached to Allstate's Compendium of Evidence as **Exhibit 13** at CN41 is a true and correct copy of a January 17, 2017 claim note reflecting Allstate's attempt to speak with Johnson.

13. Attached to Allstate's Compendium of Evidence as **Exhibit 16** is a true and correct copy of a February 14, 2018 letter that Allstate received on February 20, 2018, from Johnson's counsel, Rickey Ivie. Enclosed with the letter that Allstate received included medical records from Dr. Ornelas (showing that Johnson visited

him on February 7, 2017) and medical and billing records from Johnson's physical therapist (RJ Physical Therapy Group). This was the first time that Johnson and his counsel provided Allstate with medical records from Dr. Ornelas and medical and billing records from Johnson's physical therapist. The letter did not include billing records from Dr. Ornelas and instead, identified a Medicare payment of $3,017.34. This was also the first time that Allstate was informed that Johnson had received treatment for stage four prostate cancer and that his injuries from the accident aggravated his preexisting condition and amplified the pain he experienced from chemotherapy. Attached to Allstate's Compendium of Evidence as **Exhibit 13** at CN99 is a true and correct copy of a February 20, 2017 claim note reflecting Allstate's receipt of the February 14, 2018 letter on February 20, 2018.

14. On February 7, 2017, Allstate received a call Johnson who said that he had seen his doctor. Attached to Allstate's Compendium of Evidence as **Exhibit 13** at CN77 is a true and correct copy of a February 7, 2017 claim note reflecting Allstate's conversation with Johnson.

15. Attached to Allstate's Compendium of Evidence as **Exhibit 3** is a true and correct copy of a February 15, 2017, letter that Allstate received on February 21, 2017, from Johnson's counsel, Rickey Ivie, notifying Allstate of his representation of Johnson.

16. On March 3, 2017, Allstate contacted Johnson's counsel's office to follow up on Johnson's claim. Allstate was told that they would follow up with their client and get back to Allstate. Attached to Allstate's Compendium of Evidence as **Exhibit 13** at CN86 is a true and correct copy of a March 3, 2017 claim note, which reflects Allstate's conversation with Johnson's counsel's office on that day.

17. Attached to Allstate's Compendium of Evidence as **Exhibit 17** is a true and correct copy of a March 3, 2017 letter that Allstate sent to Johnson's counsel,

wherein Allstate asked counsel for a demand package and notified counsel that Allstate would follow up on Johnson's medical bills and records.

18. Attached to Allstate's Compendium of Evidence as **Exhibit 18** is a true and correct copy of an April 17, 2017 letter that Allstate sent to Johnson's counsel, wherein Allstate stated that it was still waiting for information regarding his client's injury and treatment.

19. Attached to Allstate's Compendium of Evidence as **Exhibit 19** is a true and correct copy of a May 6, 2017 letter that Allstate sent to Johnson's counsel, wherein Allstate stated that it was still waiting for information regarding his client's injury and treatment.

20. On June 1, 2017, Allstate called and left a message with Johnson's counsel's office to inquire and get a status update. Attached to Allstate's Compendium of Evidence as **Exhibit 13** at CN88 is a true and correct copy of a June 1, 2017 claim note, which reflects Allstate's attempt to reach Johnson's counsel and that it left a voicemail message.

21. Attached to Allstate's Compendium of Evidence as **Exhibit 20** is a true and correct copy of a June 1, 2017 letter that Allstate sent to Johnson's counsel, asking that Johnson complete the Medicare Authorization form.

22. Attached to Allstate's Compendium of Evidence as **Exhibit 21** is a true and correct copy of a June 1, 2017 letter that Allstate sent to Johnson's counsel, requesting all pertinent liability and damage documentation and a list of medical providers that Johnson had seen or planned to see.

23. Attached to Allstate's Compendium of Evidence as **Exhibit 4** is a true and correct copy of a June 1, 2017 letter that Allstate sent to Johnson's counsel, which enclosed a Notice of Claim form for Johnson to complete, sign and return.

24. Allstate's files do not show that Johnson, or his counsel, ever returned the Medicare Authorization form, the medical authorization form, or the Notice of Claim form to Allstate.

25. Attached to Allstate's Compendium of Evidence as **Exhibit 55** is a true and correct copy of a July 10, 2017 follow up letter that Allstate sent to Johnson's counsel.

26. On July 24, 2017, Allstate called and spoke with Johnson's counsel's office, who said they were unsure if Johnson continued to receive medical treatment. Attached to Allstate's Compendium of Evidence as **Exhibit 13** at CN90 is a true and correct copy a July 24, 2017 claim note reflecting Allstate's conversation with counsel's office that day.

27. Attached to Allstate's Compendium of Evidence as **Exhibit 22** is a true and correct copy of a August 3, 2017 follow up letter that Allstate sent to Johnson's counsel, again inquiring as to the status of Johnson's injury and treatment.

28. Attached to Allstate's Compendium of Evidence as **Exhibit 23** is a true and correct copy of a September 5, 2017 follow up letter that Allstate sent to Johnson's counsel, again inquiring as to the status of Johnson's injury and treatment.

29. Attached to Allstate's Compendium of Evidence as **Exhibit 24** is a true and correct copy of a October 2, 2017 follow up letter that Allstate sent to Johnson's counsel, again inquiring as to the status of Johnson's injury and treatment.

30. Allstate's files do not show that it ever received a response from Johnson or his counsel to Allstate's inquiries made on August 3, September 5, and October 2, 2017.

31. Attached to Allstate's Compendium of Evidence as **Exhibit 25** is a true and correct copy of an October 10, 2017letter that Allstate sent to Johnson's counsel, which stated that, to resolve his claim, Allstate needed to know how much Medicare had paid for his injury and advised that Medicare would not release that information without his permission. Allstate enclosed a Medicare Consent release form with the letter and asked that Johnson sign and return it.

32. Allstate's files do not show that Johnson ever signed and returned the Medicare Consent release form enclosed with Allstate's October 10, 2017 letter.

33. Attached to Allstate's Compendium of Evidence as **Exhibit 26** is a true and correct copy of an October 30, 2017 follow up letter that Allstate sent to Johnson's counsel. Attached to Allstate's Compendium of Evidence as **Exhibit 27** is a true and correct copy of a November 24, 2017 follow up letter that Allstate sent to Johnson's counsel. On December 6, 2017, Allstate called Johnson's counsel and left a message regarding the status of their demand. Attached to Allstate's Compendium of Evidence as **Exhibit 13** at CN 94 is a true and correct copy of a December 6, 2017 claim note, which reflects Allstate's attempt to contact Johnson's counsel and the message left with counsel that day. Attached to Allstate's Compendium of Evidence as **Exhibit 28** is a true and correct copy of a December 28, 2017 follow up letter that Allstate sent to Johnson's counsel. Allstate's files do not show that Johnson's counsel ever responded to Allstate's October 30, November 24, and December 28, 2017 letters, or the message left for counsel on December 6, 2017.

34. On January 19, 2018, Allstate called and left yet another message with Johnson's counsel requesting an update. Attached to Allstate's Compendium of Evidence as **Exhibit 13** at CN97 is a true and correct copy of a January 19, 2018 claim note, which reflects Allstate's attempt to reach Johnson's counsel and the message left for counsel that day. On January 23, 2018, Allstate received a call from Johnson's counsel who said that they were preparing the demand package. Attached to Allstate's Compendium of Evidence as **Exhibit 13** at CN98 is a true and correct copy of a January 23, 2018 claim note, which reflects Allstate's conversation with Johnson's counsel that day.

35. Attached to Allstate's Compendium of Evidence as **Exhibit 29** is a true and correct copy of a January 29, 2018 follow up letter that Allstate sent to Johnson's counsel.

36. Attached to Allstate's Compendium of Evidence as **Exhibit 30** is a true and correct copy of a January 29, 2018 letter that Allstate received from Centers for

Medicare & Medicaid Services ("Medicare"). The letter provided notice to Allstate that Medicare had paid $3,017.34 for Johnson's medical treatment and thus had a lien on future recovery. Medicare's letter enclosed a payment summary form, which identified the medical providers who treated Johnson.

37. Attached to Allstate's Compendium of Evidence as **Exhibit 31** is a true and correct copy of a February 20, 2018 letter that Allstate sent to Johnson's counsel acknowledging the February 14, 2018 demand and stating that that it would conduct an initial evaluation. That same day, Allstate contacted Johnson's counsel and requested Dr. Ornelas' billing records and Medicare lien information. Attached to Allstate's Compendium of Evidence as **Exhibit 13** at CN100-103 are true and correct copies of February 20, 2018 claim notes, which reflect Allstate's communications with Johnson's counsel and requests for billing records and Medicare lien information that day.

38. On February 20, 2018, Allstate prepared an assessment of the bills that Johnson's counsel submitted and verified that Medicare had paid Johnson's physical therapist $2,482.82 and that the physical therapist wrote off $7,369.40, leaving only a balance of $7.86. Attached to Allstate's Compendium of Evidence as **Exhibit 32** is a document tilted "NISHI VERIFICATION TABLE," which reflects Allstate's initial evaluation of the bills and verification of what had been paid, and any remaining balances.

39. Attached to Allstate's Compendium of Evidence as **Exhibit 33** is a true and correct copy of a February 21, 2018 letter that Allstate sent to Johnson's counsel, stating that it could not accept or reject the February 14, 2018 settlement demand because it still needed billing records for Dr. Ornelas and the physical therapist. Attached to Allstate's Compendium of Evidence as **Exhibit 13** at CN105 is a true and correct copy of a February 21, 2018 claim note entry, which reflects Allstate's investigation into Johnson's claim and the records and information still needed and requested.

SMRH:4811-9138-1219.1  DECLARATION OF JASON ROMINE

40. Attached to Allstate's Compendium of Evidence as **Exhibit 13** at CN107 is a true and correct copy of a March 1, 2018 claim note entry, which reflects Allstate's conversation with Johnson's counsel's office that day, following up Allstate's request for missing billing records.

41. On March 6, 2018, Allstate received from Johnson's counsel a copy of the January 29, 2018 letter from Medicare – a document that Allstate had already received more than a month earlier. Attached to Allstate's Compendium of Evidence as **Exhibit 34** is a true and correct copy of an email that Allstate received from Johnson's counsel on March 6, 2018, enclosing the letter from Medicare. Attached to Allstate's Compendium of Evidence as **Exhibit 13** at CN107 is a true and correct copy of a March 6, 2018 claim note entry, which shows that Allstate received the email from counsel on that date.

42. Attached to Allstate's Compendium of Evidence as **Exhibit 35** is a true and correct copy of a March 13, 2018 letter that Allstate sent to Johnson's counsel requesting medical records for the treatment that Johnson received from a number of medical providers – Keck Hospital, Joel Levine, C. Ornelas, and Jason Bang.

43. Attached to Allstate's Compendium of Evidence as **Exhibit 36** is a true and correct copy of a March 15, 2018 follow up letter that Allstate sent Johnson's counsel.

44. On March 28, 2018 Johnson's counsel office contacted Allstate and asked for a response to their settlement demand. That same day, in response to the request for a response to the settlement demand, Allstate explained that it could not accept or reject the demand because it had not received the treatment records for the treatment identified in the letter from Medicare. Johnson's counsel office said that they did not have the requested records. Attached to Allstate's Compendium of Evidence as **Exhibit 13** at CN109 is a true and correct copy of a March 28, 2018 claim note entry. The claim note entry reflects the conversation between Allstate and Johnson's counsel's office on March 28, 2018.

45. On April 2, 2018, Johnson's counsel called Allstate and again wanted to know the status of settlement. Allstate informed counsel that it was still waiting on treatment documents identified in the letter from Medicare. Attached to Allstate's Compendium of Evidence as **Exhibit 13** at CN110 is a true and correct copy of an April 2, 2018 claim note entry. The claim note entry reflects the conversation between Allstate and Johnson's counsel on April 2, 2018.

46. On April 4, 2018, Allstate called and left a message with Johnson's counsel, reiterating and again identifying the medical treatment records that it still needed to evaluate Johnson's claim. Attached to Allstate's Compendium of Evidence as **Exhibit 13** at CN110 is a true and correct copy of an April 4, 2018 claim note entry. The claim note reflects the voicemail message that Allstate left with Johnson's counsel on April 4, 2018.

47. On April 12, 2018, Allstate spoke with Johnson's counsel, who expressed confusion about what Allstate needed. Allstate went through the Medicare Notice, line by line, with counsel. Johnson's counsel said that they could not obtain the requested records or bills. In response, Allstate said that it could make the request if counsel provided the authorization form, which he agreed to do. Attached to Allstate's Compendium of Evidence as **Exhibit 13** at CN110-110 is a true and correct copy of an April 12, 2018 claim note entry. The claim note reflects the conversation that Allstate had with Johnson's counsel on April 12, 2018.

48. On April 12, 2018, Allstate sent an email to Johnson's counsel, attaching a medical authorization form, and asking that Johnson sign and date it. Attached to Allstate's Compendium of Evidence as **Exhibit 13** at CN111 is a true and correct copy of an April 12, 2018 claim note entry. The claim note reflects the email that Allstate sent to Johnson's counsel on April 12, 2018. Attached to Allstate's Compendium of Evidence as **Exhibit 37** is a true and correct copy of the Authorization to Disclose Health Information and Other Records, that Allstate sent to Johnson's counsel with its April 12, 2018 email.

49. Attached to Allstate's Compendium of Evidence as **Exhibit 38** is a true and correct copy of an April 13, 2018 letter that Allstate sent to Johnson's counsel, again requesting that Johnson sign, date and return the medical authorization form. Attached to Allstate's Compendium of Evidence as **Exhibit 39** is a true and correct copy of an April 13, 2018 letter that Allstate sent to Johnson's counsel, explaining that it was waiting for the signed authorization form in order to obtain the missing bills and records for evaluation. Allstate's files do not show that Johnson ever returned the signed medical authorization form to Allstate.

50. Attached to Allstate's Compendium of Evidence as **Exhibit 40** is a true and correct copy of an April 26, 2018 letter that Allstate received from Johnson's counsel, enclosing medical records and explaining the basis for the charges that appeared on the Medicare Notice.

51. On April 27, 2018, Allstate called and left a voice message with Johnson's counsel to follow up on the needed medical authorization form. Attached to Allstate's Compendium of Evidence as **Exhibit 13** at CN112 is a true and correct copy of an April 27, 2018 claim note entry, which reflects the message that Allstate left for Johnson's counsel.

52. On May 3, 2018, Johnson's counsel contacted Allstate and said that he would like an offer by May 17, 2018, based on the information provided. Attached to Allstate's Compendium of Evidence as **Exhibit 13** at CN116 is a true and correct copy of a claim note entry, reflecting the call that Allstate received from Johnson's counsel.

53. On May 14, 2018, Allstate updated its assessment based on the records received to reflect that Medicare had paid $3,621.14 of the $22,129.85 billed as payment in full, with the providers writing off the balance (with the exception of the physical therapist which had a balance of $7.86). Attached to Allstate's Compendium of Evidence as **Exhibit 41** is a true and correct copy of an Allstate

document entitled Nishi Verification Table, which Allstate used to update its assessment and valuation of Johnson's claim.

54.     On May 15, 2018, Allstate's adjuster evaluated Johnson's claim. The adjuster noted that Johnson visited his primary care provider three months after the loss, that he had physical therapy with goals met, that while an epidural injection was performed there were no records associated with the procedure and he could not confirm whether it was related to the accident or not, and that review of Medicare lien showed treatment unrelated to the accident. Attached to Allstate's Compendium of Evidence as **Exhibit 13** at CN118-120 is a true and correct copy of a May 15, 2018 claim note entry, which reflects the adjuster's evaluation of Johnson's claim. Attached to Allstate's Compendium of Evidence as **Exhibit 42** is a true and correct copy of an Allstate document entitled COLOSSUS 11.0 ASSESSMENT FOR GENERAL DAMAGES, dated May 15, 2018, which reflects the adjuster's evaluation of Johnson's claim. Colossus is a software program and tool that Allstate uses to assist in the valuation of an insured's claim.

55.     On May 16, 2018, Allstate's evaluation consultant (my predecessor) reviewed the adjuster's evaluation and agreed with the adjuster's analysis. She noted that the injections were not related to the accident and assessed a general damages range of $3,200 to $4,200. Attached to Allstate's Compendium of Evidence as **Exhibit 13** at CN125 is a true and correct copy of a May 16, 2018 claim note entry, which reflects the analysis performed by Allstate's evaluation consultant. On May 16, 2018, Allstate's adjuster revised his assessment, concluding that the claim had a value range of $6,321 to $7,321. Attached to Allstate's Compendium of Evidence as **Exhibit 43** is a true and correct copy of a revised Colossus Assessment, dated May 16, 2018, which Allstate's adjuster prepared after input from Allstate's evaluation consultant. Attached to Allstate's Compendium of Evidence as **Exhibit 8** is a true and correct copy of a May 16, 2018 letter that

Allstate sent to Johnson's counsel, conveying an offer of $6,821.14 to settle Johnson's claim.

56. On May 17, 2018, Johnson's counsel left a voicemail message with Allstate, stating that Johnson rejected the offer. Counsel also requested the policy wording for requesting arbitration. On May 17, 2018, Allstate spoke with Johnson's counsel, who asked Allstate for the basis for the settlement offer, which Allstate provided – delay in treatment, injections did not appear accident related, and physical therapy focused on the lower back, rather than the cervical spine. Johnson's counsel did not provide Allstate with additional information bearing on its analysis. Instead, counsel said that they would demand arbitration. Attached to Allstate's Compendium of Evidence as **Exhibit 13** at CN127-128 are true and correct copies of May 17, 2018 claim note entries, reflecting the conversation between Allstate and Johnson's counsel on that day.

57. Attached to Allstate's Compendium of Evidence as **Exhibit 9** is a true and correct copy of a June 7, 2018 letter that Allstate received from Johnson's counsel, demanding to arbitrate Johnson's claim.

58. Attached to Allstate's Compendium of Evidence as **Exhibit 6** is a true and correct copy a June 28, 2019 Consultation Orthopedic Surgery report (also called an independent medical examination ("IME") report) that Allstate received from the office of Geoffrey M. Miller M.D. on July 1, 2019. Attached to Allstate's Compendium of Evidence as **Exhibit 54** is a true and correct copy of a June 28, 2019 Record Review Orthopedic Surgery report that Allstate received from the office of Dr. Miller on July 1, 2019.

59. Attached to Allstate's Compendium of Evidence as **Exhibit 50** is a true and correct copy of a July 18, 2019, Orthopedic Medical Evaluation report by Johnson's orthopedic expert, Dr. Michael Smith, which Allstate received from Johnson's counsel.

60. On January 14, 2019, I received a recommendation from Allstate's adjuster, who had re-reviewed Johnson's claim, that Allstate pay $20,000 to $35,000 to settle the claim. On January 21, 2019, I reviewed the file and disagreed with the settlement recommendation, because the IME doctor, Dr. Miller, concluded that if the injuries were related to the accident, the treatment would have been completed by May 3, 2017, when Johnson reached maximum medical improvement with physical therapy. There was then a 17 month gap before any other complaints to his neck and shoulder, which had resolved and even Johnson believed were caused from his new medication. I agreed that, even though it did not hinder the treatment he received, Johnson's prostate cancer was a value driver that would gain sympathy. Based on the medical records received and the IME report, I assessed general damages of $7,000 to $11,500, with a settlement range of $10,621.44 to $15,121.14. In assessing the claim value and settlement value range, I relied on Dr. Miller's June 28, 2019 IME report. In assessing the claim value and settlement range, I did not rely on Johnson's hired expert, Dr. Smith, or find his July 28, 2019 report to be credible. Among other things, Dr. Smith did not touch on Johnson's prior injuries or treatment other than to say that Johnson had surgery 30 years earlier. Also, I did not find the report credible, because Dr. Smith did not address any of Johnson's medical treatment between the surgery and the accident, specifically the treatment that Johnson had received just before the loss (including epidural injections). I determined that Dr. Miller's IME report, on the other hand, went into detail regarding Johnson's status before the loss. Given its proximity to the accident, I considered this to be very crucial. I also questioned why Johnson would seek a report from a doctor that had no involvement with Johnson's treatment up that point, rather than his primary care physician, Dr. Ornelas, who treated Johnson before and after the accident, and therefore would have knowledge of any changes in symptoms. In addition, I noted that Dr. Smith gave little reasoning for his opinion and his recommendation for future treatment was generic – i.e., Dr. Smith said for

Johnson to try conservative treatment and if that did not work, they would may have to consider surgery (a recommendation that could apply to anyone with back pain).

61. On January 27, 2020, Allstate spoke with Johnson's counsel and offered $13,000 to resolve Johnson's claim. On January 27, 2020, Johnson's counsel rejected Allstate's settlement offer. Attached to Allstate's Compendium of Evidence as **Exhibit 13** at CN172 is a true and correct copy of a January 27, 2020 claim note entry, reflecting the conversation between Allstate and Johnson's counsel of that date regarding Allstate's settlement offer.

62. On April 3, 2020, Allstate received Judge Shook's arbitration award of $50,000 in Johnson's favor and on April 8, 2020, issued payment to Johnson for the full amount.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed this 5th day of April, 2021, in San Tan Valley, Arizona.

Jason Romine